**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| APOTEX INC. | ) |
| | ) |
| Plaintiff, and | ) |
| | ) |
| MUTUAL PHARMACEUTICAL CO., INC., | ) Case No. 06-1890 (RMC) |
| | ) |
| Intervenor-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FOOD AND DRUG ADMINISTRATION, *et al.* | ) |
| | ) |
| Defendants, and | ) |
| | ) |
| DR. REDDY'S LABORATORIES, LTD., *et al.*, | ) |
| | ) |
| Intervenor-Defendants. | ) |
| | ) |

**REPLY MEMORANDUM IN SUPPORT OF APOTEX INC.'S MOTION FOR
<u>PRELIMINARY INJUNCTION</u>**

William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik
Alice L. Riechers
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301

Arthur Y. Tsien, D.C. Bar No. 411579
OLSSON, FRANK AND WEEDA, P.C.
1400 16th Street, N.W., Suite 400
Washington, D.C. 20036-2220
(202) 789-1212

Dated:  November 27, 2006                          *Counsel for Apotex Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

I.    Apotex Has A Substantial Likelihood Of Succeeding On The Merits Of Its
      Claims. .................................................................................................................... 2

      A.    The *GSK* Order Qualifies As A Triggering Court Decision Under FDA's
            So-Called "Holding-On-The-Merits" Interpretation Of That Statutory
            Provision. ....................................................................................................... 2

            1.    The *GSK* Order Is A Court Decision Under FDA's April 2006
                  Letter Ruling. ....................................................................................... 2

            2.    FDA's Refusal To Recognize The *GSK* Order As A Court
                  Decision Trigger Unlawfully Elevates Form Over Substance .................. 3

            3.    The *GSK* Order Does Not Implicate Any Of The Agency's
                  Concerns From The April 11, 2006 Letter Ruling Regarding
                  Pravastatin ............................................................................................. 5

            4.    DRL's Arguments Are Without Merit And, In Any Case,
                  Irrelevant To This Dispute Because It Cannot Defend FDA's
                  Decision On Grounds That The Agency Itself Did Not Give ................... 6

      B.    FDA Has Unlawfully Engaged In Disparate Treatment By Refusing To
            Recognize The *GSK* Order As A Court Decision Trigger In View Of The
            Indistinguishable *Granutec* Order ................................................................. 8

      C.    If, As FDA Concedes, The *GSK* Order Qualifies As A Court Decision
            That "The Patent Is Invalid Or Not Infringed" Sufficient To Terminate
            The 30-Month Stay, Then It Also Must Qualify As A Court Decision
            Trigger .......................................................................................................... 13

      D.    FDA's November 3, 2006 Letter Ruling And Interpretation Leads To
            Absurd Results And Effectively Eliminates The Court Decision Trigger ........... 16

      E.    Collateral Estoppel Does Not Apply Or Otherwise Bar Apotex's Claims. .......... 18

II.   The Harm To Apotex Is Substantial And Irreparable. ........................................... 20

III.  The Balance Of Harms Tips Decidedly In Favor Of Granting Immediate
      Injunctive Relief ................................................................................................... 21

IV.   An Injunction Would Further The Public Interest. ................................................ 21

CONCLUSION.......................................................................................................................... 22

# TABLE OF AUTHORITIES

## Federal Cases

*Apotex, Inc. v. FDA*,
   449 F.3d 1249 (D.C. Cir. 2006) ................................................................... 13, 21

*Berrigan v. Sigler*,
   499 F.2d 514 (D.C. Cir. 1974) ............................................................................ 18

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988) .............................................................................................. 7

*Bracco Diagnostics, Inc. v. Shalala*,
   963 F. Supp. 20 (D.D.C. 1997) .............................................................. 8, 10, 13

*Burlington N. and Santa Fe Ry. Co. v. STB*,
   403 F.3d 771 (D.C. Cir. 2005) .............................................................................. 8

*Burlington Truck Lines v. United States*,
   371 U.S. 156 (1962) ......................................................................................... 7, 8

*Bush-Quayle '92 Primary Comm. v. FEC*,
   104 F.3d 448 (D.C. Cir. 1997) ............................................................................ 13

*C.F. Communications Corp. v. FCC*,
   128 F.3d 735 (D.C. Cir. 1997) ............................................................................ 18

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ............................................................................................ 14

*City of Kansas City, Missouri v. Dep't of HUD*,
   923 F.2d 188 (D.C. Cir. 1991) .............................................................................. 7

*Cmty. Nutrition Inst. v. Block*,
   749 F.2d 50 (D.C. Cir. 1984) .............................................................................. 18

*Crosthwait v. FCC*,
   584 F.2d 550 (D.C. Cir. 1978) .............................................................................. 7

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS*,
   300 F. Supp. 2d 32 (D.D.C. 2004) ...................................................................... 13

*Greater Boston Tel. Corp. v. FCC*,
   444 F.2d 841 (D.C. Cir. 1970) ............................................................................ 13

*Indep. Petroleum Ass'n of Am. v. Babbitt*,
   92 F.3d 1248 (D.C. Cir. 1996) .............................................................. 8, 10, 13

*Kuzinich v. County of Santa Clara,*
    689 F.2d 1345 (9th Cir. 1982) ................................................................ 18

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983)................................................................................ 7, 8

*Mova Pharm. Corp. v. Shalala,*
    140 F.3d 1060 (D.C. Cir. 1998)......................................................... 21, 22

*Natural Res. Def. Council, Inc. v. Herrington,*
    768 F.2d 1355 (D.C. Cir. 1985) ............................................................... 8

*New York State Bar Ass'n v. FTC,*
    276 F. Supp. 2d 110 (D.D.C. 2003) ......................................................... 7

*Nuclear Energy Inst., Inc. v. EPA,*
    373 F.3d 1252 (D.C. Cir. 2004) ............................................................. 19

*Pharm. Research And Mfrs. of Am. v. Thompson,*
    250 F. Supp. 2d 39 (D.D.C. 2003) ......................................................... 18

*Pub. Citizen Health Research Group v. FDA,*
    704 F.2d 1280 (D.C. Cir. 1983) ............................................................. 18

*Serono Labs., Inc. v. Shalala,*
    158 F.3d 1313 (D.C. Cir. 1998) ............................................................... 8

*Teva Pharms. USA v. FDA,*
    182 F.3d 1003 (D.C. Cir. 1999) ............................................................. 21

*Teva Pharms. USA, Inc. v. FDA,*
    398 F. Supp. 2d 176 (D.D.C. 2005) ......................................................... 7

*Teva Pharms. USA, Inc. v. FDA,*
    441 F.3d 1 (D.C. Cir. 2006)..................................................................... 7

*Transactive Corp. v. United States,*
    91 F.3d 232 (D.C. Cir. 1996).................................................................. 13

*Univ. of Texas v. Camenisch,*
    451 U.S. 390 (1981)............................................................................... 18

**Federal Statutes**

21 U.S.C. § 355(j)(5)(B)(iii)............................................................................ 1, 16

21 U.S.C. § 355(j)(5)(B)(iii)(I).......................................................................... 15

21 U.S.C. § 355(j)(5)(B)(iii)(I)(bb) ................................................................... 15

21 U.S.C. § 355(j)(5)(B)(iv) ............................................................................... 16, 22

21 U.S.C. § 355(j)(5)(B)(iv)(I) ............................................................................. 1

21 U.S.C. § 355(j)(5)(B)(iv)(II) ........................................................................... 14

35 U.S.C. § 271(e)(2)(A) .................................................................................... 4

## INTRODUCTION

All parties agree that GSK sued Apotex for patent infringement, thus triggering a 30-month stay of FDA approval of Apotex's ondansetron ANDA.  All parties further agree that the district court hearing GSK's case signed and entered an Order dismissing that action with prejudice **based on GSK's express concession of non-infringement embodied on the face of the Order**.  While no one seriously disputes that the *GSK* Order was a court decision that the "patent is invalid or not infringed" sufficient to terminate the 30-month stay under any version of the statute, FDA nonetheless concluded in the letter ruling under review, dated November 3, 2006 (A.R. Tab 3), that the *GSK* Order was not a court decision "holding the patent . . . to be invalid or not infringed" sufficient to trigger 180-day exclusivity.  FDA did so despite finding that a substantively indistinguishable order in another case (*Granutec*)—**also based solely on a concession of non-infringement on the face of the order**—was a court decision sufficient to trigger the 180-day generic exclusivity period.

As demonstrated in Apotex's opening brief, FDA's November 3, 2006 letter ruling is arbitrary, capricious and contrary to law for at least the following independent reasons:

- **First**, the *GSK* Order qualifies as a triggering court decision under FDA's so-called "holding-on-the-merits" interpretation from the Agency's April 11, 2006 pravastatin letter ruling.  FDA, therefore, has violated its own prior precedent and interpretation.

- **Second**, FDA has engaged in unlawful disparate treatment by refusing to treat the *GSK* Order as a triggering court decision in view of the substantively indistinguishable *Granutec* Order.  FDA has provided no reason, much less a legitimate one, for treating the orders differently—the hallmark of arbitrary agency action in violation of the APA.

- **Third**, under the controlling statutory language, an order sufficient to terminate the 30-month stay also is sufficient to trigger exclusivity.  If, as FDA concedes, the *GSK* Order terminated the stay under § 355(j)(5)(B)(iii), then it also is a triggering court decision under § 355(j)(5)(B)(iv)(II).  FDA's inconsistent interpretation is contrary to law.

- **Fourth**, FDA's letter ruling and interpretation leads to absurd results, eliminates the court decision trigger, and allows the brand company alone to manipulate generic exclusivity.

1

FDA and DRL's contrived arguments and *post hoc* rationalizations all are without merit, including their baseless claims of collateral estoppel. None of these issues or claims (and certainly nothing about Apotex's ondansetron ANDA or FDA's November 3, 2006 letter ruling under review) were, or could have been, litigated and decided in any prior action. Together with the substantial irreparable harm that Apotex will undoubtedly suffer, Apotex has established a substantial likelihood of success on the merits of its claims that warrants immediate injunctive relief.

I.    **Apotex Has A Substantial Likelihood Of Succeeding On The Merits Of Its Claims.**

   A.    **The *GSK* Order Qualifies As A Triggering Court Decision Under FDA's So-Called "Holding-On-The-Merits" Interpretation Of That Statutory Provision.**

      1.    **The *GSK* Order Is A Court Decision Under FDA's April 2006 Letter Ruling.**

FDA has interpreted the court-decision trigger to require "a decision of a court that on its face evidences a holding on the merits that a patent is invalid, not infringed, or unenforceable"—otherwise known as FDA's so-called "holding-on-the-merits" interpretation. (A.R. Tab 6 at 6.) The *GSK* Order unquestionably satisfies that standard.

First, FDA concedes, as it must, that the *GSK* Order is a "decision of a court." The district court signed and entered a decision dismissing GSK's action with prejudice.

Second, that court decision rests on the district court's express adoption and incorporation of GSK's admission that "the ondansetron hydrochloride tablets that are the subject of and described in Apotex Inc.'s ANDA No. 77-306 do not infringe, and if imported, manufactured, used, sold or offered for sale in the United States would not infringe, any claim of GlaxoSmithKline's U.S. Patent No. 5,344,658 ("the '658 patent")." (A.R. Tab 1, Ex. E at 2.) In that respect, the *GSK* court decision is identical to the court's order in *Granutec*, which granted

partial summary judgment and dismissed the case "[b]ased on Plaintiffs' express concession that Defendants' product does <u>not</u> infringe," ((Tsien Decl. Ex. E (underline in original)), and which, according to FDA, satisfies its holding-on-the-merits interpretation of the court-decision trigger (A.R. Tab 6 at 12.)

And, third, the holding of non-infringement appears on the face of the *GSK* Order. The Agency need look no further than the Order itself for the holding on the merits of non-infringement. Nor does FDA have to engage in any substantive determinations of patent estoppel or other "complicated" issues supposedly beyond the Agency's expertise. The *GSK* Order also has all the critical elements of a holding on the merits of non-infringement.

In sum, no more is required for a court decision trigger, even under FDA's own holding-on-the-merits interpretation. For this reason alone, FDA's decision cannot stand.

### 2. FDA's Refusal To Recognize The *GSK* Order As A Court Decision Trigger Unlawfully Elevates Form Over Substance.

FDA now argues that the *GSK* Order is not a "holding" because the Order "reflects the views and commitments of the parties" and not a "substantive determination" by the court. (FDA Br. at 16.) This is a distinction without a legally significant difference, one that unlawfully elevates form over substance. That an order is based on a party admission, rather than a contested determination by a court, does not render it any less of a court decision or holding. Courts can, and do, decide cases every day based on party admissions, which is precisely what the *GSK* court did here by dismissing the action with prejudice based on GSK's admission of non-infringement. That also is precisely what happened in *Granutec*, when the court granted summary judgment *solely* "based on the patentee's concession that the defendant's product did not infringe." (A.R. Tab 6 at 12.)

FDA has cited nothing to suggest that a "holding" cannot be based on a party admission or concession of non-infringement—and for good reason, because there is no such authority.  To hold otherwise impermissibly limits court decision triggers to rulings on *contested* dispositive motions or after a full trial.  But nothing in the statute or FDA's April 11, 2006 letter ruling requires such a result.  Quite the contrary, FDA conceded that the statute "does not require such a narrow reading," concluding that "[c]onsistent with its decision in the *Granutec* case, FDA's interpretation does not demand, and the agency does not intend to limit its scope to, court decisions following a full trial."  (A.R. Tab 6 at 12 n.8.)  For the same reason, FDA cannot lawfully limit court decisions or holdings to contested dispositive motions either, since not even *Granutec* was contested, but rather based on a party admission alone.  The fact of the matter is that FDA's ever-evolving distinctions—not found in the statute or any prior letter ruling—would exclude every single uncontested ruling, whether in a consent judgment, after a trial, or in a dismissal order.  Indeed, many trial rulings and holdings are based on stipulations and concessions of the parties, but that does not disqualify them as "holdings."  The bottom line is that a holding of non-infringement based on a party admission in a dismissal order is a holding, and is perfectly consistent with the holding-on-the-merits interpretation in FDA's April 11, 2006 letter ruling.  The form of, or vehicle for, that holding should make no legal difference.

FDA also argues that the *GSK* Order is not a "holding" because the "court was not asked to resolve the dispute and did not do so."  (FDA Br. at 16.)  That not only is ridiculous, but would be news to the *GSK* district court.  GSK sued Apotex for alleged patent infringement under 35 U.S.C. § 271(e)(2)(A), thus squarely vesting the district court with subject matter jurisdiction to decide the infringement question.  After several months of litigation, GSK presented the court with a request for dismissal with prejudice based on GSK's concession of

non-infringement.  How the court could have been asked to resolve the dispute any more directly FDA does not say.  Under FDA's evolving interpretation of its own letter ruling, it appears that Apotex, after being sued, should have rejected GSK's admission of non-infringement and demanded a full trial or summary judgment.  But not only would that be impossible (since the district court would never allow it), such an absurd result could not be what Congress intended.  In any case, the end result of GSK's concession of non-infringement would have been the same regardless of procedural motion or vehicle:  dismissal of the action with prejudice, just as happened here.

In the end, the only distinction that FDA can draw is that the *GSK* Order was not a contested ruling rendered pursuant to summary judgment or after a full trial.  But nothing in the statute or FDA's interpretation requires such a ruling.  This Court should reject FDA's ever-evolving distinctions that conflict with both the statute and FDA's own interpretation.

### 3.    The *GSK* Order Does Not Implicate Any Of The Agency's Concerns From The April 11, 2006 Letter Ruling Regarding Pravastatin.

Pointing again to pravastatin, FDA argues that a "so ordered" dismissal does not help Apotex because the pravastatin dismissal also was so ordered.  (FDA Br. at 16-17.)  This is a red herring.  As FDA itself concedes, the two orders are not even remotely comparable.

Pravastatin involved a declaratory judgment action that was dismissed without prejudice for lack of subject matter jurisdiction.  Here, on the other hand, GSK sued Apotex for patent infringement and the court dismissed the action with prejudice based on an admission of non-infringement—that is, based on a holding on the merits of the patent dispute.  To the extent that FDA is attempting to imply that a "so ordered" decision is not a "holding," that, too, fails.  FDA repeatedly has conceded that a "so ordered" disposition is, in fact, a decision of a court with a "holding."  (*See* Rakoczy Decl. Ex. A at 8-9 (acknowledging that "so ordered" dismissal

is a "decision of a court" with a "holding" that adopts the contents of the order); A.R. Tab 6 at 12 (acknowledging that uncontested "so ordered" *Granutec* order, based solely on concession of non-infringement, is decision of a court with a holding-on-the-merits).)[1]

FDA also suggests that the its November 3, 2006 ruling on ondansetron exclusivity is entirely consistent with the Agency's April 11, 2006 letter ruling, which rejected the pravastatin court decision based on, among other things, the alleged difficulties the Agency faced in making court decision determinations under the estoppel-based standard. (FDA Br. at 17.) That is irrelevant here. The *GSK* Order does not implicate any of those so-called difficulties, least of all any estoppel-based determinations regarding the estoppel effect of the Order. Nor must FDA look beyond the face of the decision to determine that it is a court decision trigger. Far from taxing Agency resources and requiring purportedly complicated legal determinations, the *GSK* Order satisfies the holding-on-the-merits standard on its face.

**4.     DRL's Arguments Are Without Merit And, In Any Case, Irrelevant To This Dispute Because It Cannot Defend FDA's Decision On Grounds That The Agency Itself Did Not Give.**

DRL takes a different tack from FDA, devoting several pages to arguments that not even the Agency raised in its November 3, 2006 administrative decision. For example, DRL echoes and cites Judge Bates' prior determination that a Rule 41 dismissal order somehow cannot constitute a "decision of a court." (*See* DRL Br. at 21-23.)[2] As an initial matter, FDA disagrees with this position, and repeatedly has conceded that a "so ordered" disposition signed

---

[1] All references to "Rakoczy Decl." are to the Declaration of William A. Rakoczy, submitted concurrently herewith.

[2] DRL also suggests that somehow Apotex had a plan to trigger DRL's exclusivity by provoking suit. (DRL Br. at 1-2.) That not only is irrelevant, but complete nonsense. Apotex complied with all statutory and regulatory requirements by notifying GSK of its ANDA and the detailed factual and legal basis for Apotex's paragraph IV certification. In response, GSK sued Apotex for alleged patent infringement. Apotex did nothing but defend the suit until GSK admitted that Apotex did not infringe.

and entered by the district court is a "decision of a court." (*See* Rakoczy Decl. Ex. A at 8-9; A.R. Tab 6 at 12.) FDA cannot backtrack now. FDA, moreover, has refused to engage in judicial mind reading by speculating, as DRL does here, whether the district court even reviewed and understood the dismissal order. DRL also neglects to mention that the D.C. Circuit vacated the district court decision that DRL cites and relies upon for this argument. *See Teva Pharms. USA, Inc. v. FDA*, 441 F.3d 1, 5 (D.C. Cir. 2006) (vacating and remanding *Teva Pharms. USA, Inc. v. FDA*, 398 F. Supp. 2d 176 (D.D.C. 2005)).

But even if such arguments had any legal support (they do not), they cannot, as a matter of law, be used to defend the Agency's administrative ruling here. The law is clear: The court cannot rely on *post hoc* litigation-driven rationalizations of counsel to defend the Agency's action. *See Crosthwait v. FCC*, 584 F.2d 550, 556 (D.C. Cir. 1978); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988) (refusing to defer to agency interpretation that was a "litigati[on] position[] . . . wholly unsupported by regulations, rulings, or administrative practice"); *City of Kansas City, Mo. v. HUD*, 923 F.2d 188, 192 (D.C. Cir. 1991) ("In whatever context we defer to agencies, we do so with the understanding that the object of our deference is the result of agency decisionmaking, and not some *post hoc* rationale developed as part of a litigation strategy."); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (stating that "courts may not accept . . . counsel's *post hoc* rationalizations for agency action"); *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962) (same); *New York State Bar Ass'n v. FTC*, 276 F. Supp. 2d 110, 139 (D.D.C. 2003) (refusing to defer to agency interpretation based on rationale first adopted in litigation because "[s]uch *post hoc* rationalizations are inadequate under *Chevron* and cannot serve as a substitute for an agency's reasoned decision-making").

Equally as clear:  Under the APA, administrative action can be supported and defended, if at all, only by the reasons given by the Agency itself in the administrative context, and not by third parties such as DRL.  *See, e.g.*, *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1325 (D.C. Cir. 1998) (stating that reviewing courts cannot "uphold agency action on the basis of rationales offered by anyone other than the proper [agency] decisionmakers"); *Natural Res. Def. Council, Inc. v. Herrington*, 768 F.2d 1355, 1397 n.40 (D.C. Cir. 1985) (stating that reviewing courts "may sustain the agency's decision only on the rationale that it offered, we cannot uphold the agency's result by adopting the new definition intervenors propose"); *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50 (stating that "courts may not accept . . . counsel's *post hoc* rationalizations for agency action"); *Burlington Truck Lines*, 371 U.S. at 168 (same).

> **B.**     **FDA Has Unlawfully Engaged In Disparate Treatment By Refusing To Recognize The *GSK* Order As A Court Decision Trigger In View Of The Indistinguishable *Granutec* Order.**

It is well settled that "an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so."  *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996).  "Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld."  *Burlington N. and Santa Fe Ry. Co. v. Surface Transportation Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005); *see also Bracco Diagnostics, Inc. v. Shalala*, 963 F. Supp. 20, 27, 31 (D.D.C. 1997) (granting injunctive relief based on FDA's disparate treatment of one product as a device and similar product as a drug).

In this case, FDA has engaged in disparate treatment here by refusing to recognize the *GSK* Order as a court decision trigger.  For this reason as well, the Agency's decision cannot stand.

8

As Apotex demonstrated in its opening brief, the *Granutec* order is substantively indistinguishable from the *GSK* Order under review here.   In particular, the *Granutec* order reads, *in toto*:

> Defendants have moved for partial summary judgment (doc. # 135) as to Plaintiffs' claim that Defendants' ranitidine hydrochloride product infringes Plaintiffs' patents nos. 4,521,431 (the '431 patent) and 4,672,133 (the '133 patent).  ***Based on Plaintiffs' express concession that Defendants' product does <u>not</u> infringe these patents, Defendants' Motion for Partial Summary Judgment on this claim is GRANTED.  SO ORDERED.***

(Tsien Decl. Ex. E) (emphasis added) (underline in original).  FDA concedes that it treated the prior *Granutec* order as a triggering court decision under the statute (FDA Br. at 19), and that such an order satisfies the Agency's holding-on-the-merits interpretation because it is a "holding on the merits of patent noninfringement."  (A.R. Tab 6 at 12.)

Just like *Granutec*, the *GSK* court "so ordered" the dismissal with prejudice based upon the patentee's express concession that "that the ondansetron hydrochloride tablets that are the subject of and described in Apotex Inc.'s ANDA No. 77-306 ***do not infringe***, and if imported, manufactured, used, sold or offered for sale in the United States ***would not infringe, any claim of GlaxoSmithKline's ['658 patent].***"  (A.R. Tab 1, Ex. E at 2) (emphasis added).)  Thus, both courts "so ordered" their dispositions based solely upon an express concession by the patentee that the ANDA product at issue did not infringe the asserted patent.  If the *Granutec* order reflects "a substantive determination on the merits of the patent claim" and therefore a court decision trigger, then so, too, does the *GSK* Order.  And because FDA repeatedly has found the *Granutec* order to constitute a triggering court decision, it must reach the same conclusion with respect to the *GSK* Order.

Notwithstanding FDA's attempt to cloud the relevant issue, the only question for this Court to decide under the APA is whether FDA has provided a legitimate reason, *based on*

*reasoning and support in the administrative record*, for treating the *GSK* Order differently. The answer is an unqualified "no."

First, despite having notice of the *Granutec* order (Rakoczy Decl. at ¶¶ 6-7 & Ex. B), FDA admittedly provided no reason, much less a legitimate one, for treating the *GSK* Order differently. In fact, the Agency repeatedly has refused even to address the issue, asserting that it is "not pertinent" to the determination of whether there has been a holding on the merits. (A.R. Tab 3 at 4 n.5.) Incredibly, FDA continues to insist that *Granutec* is not pertinent to its determination for ondansetron. (FDA Br. at 21.) FDA is flat wrong. How FDA has treated prior court decisions under the statute, and whether such decisions satisfy the holding-on-the merits interpretation, is highly pertinent to whether the *GSK* Order satisfies that standard. Indeed, it is ludicrous to suggest that FDA can ignore prior precedent on what constitutes a court-decision trigger when making that very determination for ondansetron. At the very least, prior determinations and precedent are pertinent to deciding whether FDA has satisfied its obligation under the APA to provide consistent treatment "where the two cases are functionally indistinguishable." *Indep. Petroleum Ass'n of Am.*, 92 F.3d at 1260. "If an agency treats similarly situated parties differently, its action is arbitrary and capricious in violation of the APA." *Bracco Diagnostics*, 963 F. Supp. at 27-28 (citation omitted). FDA's refusal to supply any reason for its disparate treatment alone is arbitrary and capricious and grounds for setting aside FDA's decision here.[3]

---

[3] FDA also disingenuously criticizes Apotex for purportedly not putting its *Granutec* arguments in writing. (*See* FDA Br. at 20.) As FDA impliedly concedes, however, Apotex provided the Agency with a copy of the *Granutec* order (which FDA improperly omitted from the administrative record submitted to the Court), and specifically argued that the May 2005 *GSK* Order is as much a holding-on-the-merits as the *Granutec* order. (*See* Rakoczy Decl. Ex. B and ¶¶ 6-7.)

Second, FDA has no grounds, much less legitimate ones, for treating the *GSK* Order differently, and FDA's *post hoc* litigation-driven rationalizations all fail. The only arguable distinction (if it can even be called that) that FDA and DRL even attempt to draw is the procedural vehicle by which the holdings were issued: a dismissal order in *GSK* versus an uncontested partial summary judgment motion in *Granutec*. (*See* FDA Br. at 20; DRL Br. at 21.) But that is a wholly arbitrary distinction without a legally significant difference. As discussed above, nothing in the statute or FDA's April 11, 2006 letter ruling requires a summary judgment ruling or any other type of contested motion or ruling. From a substantive standpoint, the orders are indistinguishable and accomplish the same thing—both are affirmative rulings disposing of patent litigation in favor of the generic defendant based solely upon an express concession by the patentee that the ANDA product at issue did not infringe the asserted patent. FDA has provided no valid basis for discriminating between orders solely based on the procedural motion involved. All that is required, according to FDA, is a holding on the merits of patent non-infringement. In this case, both orders contain such holdings based on the express admission and concession of the patentee.

FDA also argues that, unlike the *Granutec* order, the *GSK* order "does not . . . indicate that the court gave any consideration to the merits or made any conclusion of law as to the patent claims." (FDA Br. at 21.) FDA is talking out of both sides of its mouth because the *Granutec* order does not satisfy that standard either. As explained in Apotex's opening brief and shown above, nothing on the face of the *Granutec* order indicates that the court made a substantive determination on the merits of the patent claim, or conducted any independent analysis of the parties' respective merits positions. Indeed, nothing on the face of that order indicates the court actually carried out any substantive analysis whatsoever of the infringement

11

claim. Just the opposite is true. On its face, the *Granutec* order states that the court based its "holding on the merits," as FDA has deemed it, solely and exclusively on the patentee's express concession that the ANDA products did not infringe the patents-in-suit. Thus, nothing on the face of the *Granutec* order indicates that the court hearing that infringement action made any more of a "merits" ruling or rendered any more of a "holding" than did the court hearing GSK's patent infringement action against Apotex. FDA cannot shield, much less justify, its disparate treatment on this basis when both courts based their orders on the same thing, *i.e.*, a concession of non-infringement.

Lastly, FDA and DRL disingenuously suggest that the D.C. Circuit somehow has rejected this disparate treatment claim. (*See* FDA Br. at 19-20; DRL Br. at 21.) Not so. The D.C. Circuit has never, and indeed could not have, addressed the lawfulness of FDA's November 3, 2006 ondansetron letter ruling, and in particular whether FDA has engaged in disparate treatment by refusing to recognize the *GSK* Order as a court decision trigger in view of its similarity to the *Granutec* order. Neither Apotex's ondansetron ANDA, the November 3, 2006 letter ruling, nor this disparate treatment claim have ever been before any court. In the case cited by FDA, the D.C. Circuit compared the *Granutec* order to the pravastatin dismissal for lack of subject matter jurisdiction. *See Apotex, Inc. v. FDA*, 449 F.3d 1249, 1252-53 (D.C. Cir. 2006). Nothing in that case addressed, or purported to address, the lawfulness of FDA's ondansetron letter ruling under review here.

At bottom, FDA cannot justify treating the *Granutec* order as a triggering court decision, while refusing to give the same treatment to the *GSK* Order, which is substantively indistinguishable. FDA's disparate treatment of substantively similar orders is the hallmark of arbitrary and capricious agency action that must be set aside by this Court. *See Indep. Petroleum*

*Ass'n of Am.*, 92 F.3d at 1258 (stating that an agency must afford similar treatment to comparable cases); *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS*, 300 F. Supp. 2d 32, 42 (D.D.C. 2004) (finding HHS's denial of coverage was arbitrary and capricious due to agency's inconsistent treatment of similarly situated parties); *Bracco Diagnostics*, 963 F. Supp. at 27-28 (granting injunctive relief based on FDA's disparate treatment of one product as a device and another product as a drug); *Bush-Quayle '92 Primary Comm. v. FEC*, 104 F.3d 448, 453 (D.C. Cir. 1997) (stating that should an agency change its course, it "must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored") (quoting *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970); *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996) (finding Treasury acted arbitrarily for neither conforming its electronic benefits transfer policies to its existing regulations nor offering a "reasoned analysis" for the difference).

**C.**      **If, As FDA Concedes, The *GSK* Order Qualifies As A Court Decision That "The Patent Is Invalid Or Not Infringed" Sufficient To Terminate The 30-Month Stay, Then It Also Must Qualify As A Court Decision Trigger.**

FDA's letter ruling also cannot stand because it conflicts and is inconsistent with the Agency's interpretation and application of virtually identical statutory language in the 30-month stay provision.   FDA concedes, as it must, that under both the original and amended versions of the statute, the 30-month stay terminates when the "court decides" that the "patent is invalid or not infringed."   (FDA Br. at 23-24.)   The controlling statutory language for a court decision trigger is nearly identical:   a court decision "holding the patent . . . to be invalid or not infringed."   21 U.S.C. § 355(j)(5)(B)(iv)(II) (2002).   "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."   *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

Here, the intent could not be more clear. By its plain terms, Congress intended that the same decision that would terminate the 30-month stay also would trigger exclusivity. FDA further concedes that the *GSK* Order under review is sufficient to terminate the stay under either version of the statute. (FDA Br. at 23-24.) In light of these concessions and the plain language of the statute, FDA cannot turn around and refuse to find such an order sufficient to constitute a triggering court decision. If, as FDA concedes, the *GSK* Order terminates the stay under any version of the statute (because it is a court decision that the "patent is invalid or not infringed"), then it must also trigger exclusivity. FDA's refusal to interpret these provisions consistently, but instead ignore clear Congress intent, is arbitrary, capricious and contrary to law.

FDA weakly suggests that Apotex could have raised this argument in the prior pravastatin litigation but did not. (FDA Br. at 26.) Wrong again. As Apotex repeatedly emphasized in its opening brief, pravastatin involved a different drug and entirely different circumstances; namely, a declaration judgment action filed by the generic defendant with regard to pravastatin ANDAs. As such, there was no 30-month stay in that litigation. Apotex could not have raised arguments about a 30-month stay that did not even exist. In contrast here, GSK sued Apotex and triggered a 30-month stay that was terminated by the *GSK* Order dismissing the case with prejudice based on GSK's concession of non-infringement. Thus, this case involves facts and issues that were not, and could not have been, litigated in the prior pravastatin action.

FDA also faults Apotex for solely relying on the introductory paragraph of the amended statute, rather than subclause (bb), which refers to settlement orders or consent decrees stating that the patent is invalid or not infringed. (*See* FDA Br. at 22-23 (citing 21 U.S.C. § 355(j)(5)(B)(iii)(I)(bb) (2006)).) FDA's selective reading of the statute fails.

FDA cannot ignore the so-called "introductory" clause of that provision, which is part of the same sentence and which clearly and unambiguously requires a court decision that the "patent is invalid or not infringed." 21 U.S.C. § 355(j)(5)(B)(iii)(I). Indeed, the provision itself only applies if "*the district court decides that the patent is invalid or not infringed*." *Id.* (emphasis added). FDA cannot pick and choose bits and pieces of the same provision, and indeed which are part of the very same sentence, to support its strained reading and interpretation. Furthermore, even if that were not the case, FDA's selective reading of the statute still fails. FDA concedes that the *GSK* Order would have terminated the 30-month stay under the *pre-amended version* of the statute, under which the stay terminates when "*the court decides that such patent is invalid or not infringed*." (FDA Br. at 23-24 (citing 21 U.S.C. § 355(j)(5)(B)(iii)(I) (2002)) (emphasis added).)[4]

FDA and DRL also argue that Apotex has not considered the purpose of the different provisions and that Congress wrote the court decision trigger more narrowly than the 30-month stay provision. (*See* FDA Br. at 24.) Nonsense. Neither FDA nor DRL point to anything in the statute itself, or its legislative history, to suggest that Congress drew the stay provision more narrowly, or that Congress had in mind a different kind of court decision for each provision. In fact, the plain language of the provisions, which control, suggests otherwise. Both provisions require a court decision that the patent is invalid or not infringed. Indeed, the pre-

---

[4] As FDA admits, there are no qualifiers in the pre-amended version of the statute, and FDA always has interpreted dismissal of patent litigation filed by the patentee—regardless of whether the order addressed the merits or not—to be a court decision "that such patent is invalid or not infringed" sufficient to terminate the 30-month stay. (*See* FDA Br. at 23-24.) The best FDA can say now is that the statute was somehow silent with regard to stipulated dismissals. (*Id.*) But the statute unambiguously states when the 30-month stay will terminate—*i.e.*, when "*the court decides that such patent is invalid or not infringed*." 21 U.S.C. § 355(j)(5)(B)(iii)(I) (2002) (emphasis added). For over 20 years, FDA interpreted this language to include dismissals with prejudice exactly like the *GSK* Order. FDA cannot treat such orders differently now.

amended language of the court decision trigger in § 355(j)(5)(B)(iv) expressly refers to a court decision under "clause (iii)," *i.e.*, § 355(j)(5)(B)(iii).  FDA does not and cannot point to any substantive or material distinctions in the express statutory language.

Finally, despite its convoluted explanation to the contrary (*see* FDA Br. at 22-27), FDA cannot run away from its own prior admission that "[b]efore enactment of the MMA, a district court decision finding a listed patent invalid or not infringed would have *both* terminated a 30-month stay and, in the case of an ANDA that qualified for 180-day exclusivity, triggered the start of such exclusivity as to that patent (if the exclusivity was not already triggered by commercial marketing)."  (Tsien Decl. Ex. K at 6.)  The fact is that FDA repeatedly and consistently has held that a dismissal like the *GSK* Order constitutes a court decision that the patent is invalid or not infringed sufficient to terminate the 30-month stay.  Under the controlling statutory language, such an order must also be sufficient to trigger exclusivity.  FDA cannot reconcile its inconsistent treatment of virtually identical statutory language.

D.     **FDA's November 3, 2006 Letter Ruling And Interpretation Leads To Absurd Results And Effectively Eliminates The Court Decision Trigger.**

Under FDA's November 3, 2006 letter ruling, a brand company can sue a generic ANDA applicant (even one that may not infringe), trigger a 30-month stay of the ANDA, litigate the case for as long as it likes, concede non-infringement in a dismissal with prejudice on the merits, and then still continue to block approval of that generic applicant, just as FDA's letter ruling would allow GSK to do here.  This result not only is absurd, but could not possibly have been contemplated or intended by Congress.  It also effectively eliminates the court decision trigger and allows the patentee to manipulate the system and delay generic competition by, ironically enough, conceding non-infringement.

16

Incredibly, FDA says this is acceptable since applicants like Apotex can bring declaratory judgment actions to seek court decision triggers. (*See* FDA Br. at 27.) But this misses the point entirely. Apotex cannot file a declaratory judgment action against a brand company where, as here, the brand sues Apotex first, concedes non-infringement and covenants, and the district court enters a decision dismissing the brand company's patent infringement action with prejudice based on an express concession of non-infringement. A declaratory judgment action simply is not an option here, which only further proves Apotex's point—that FDA's letter ruling guarantees that later-filers like Apotex cannot obtain a court decision trigger.

FDA also argues that the D.C. Circuit already rejected this "identical" argument in the prior pravastatin litigation. (*See* FDA Br. at 27-28.) Again, not so. In that case, the D.C. Circuit considered whether FDA's interpretation eliminated the ability to file a declaratory judgment action. But that has nothing to do with whether the FDA letter ruling at issue here eliminates the court decision trigger where the patentee actually sues the generic defendant first. In that case, unlike the jurisdictional hurdles faced by a declaratory plaintiff, the court without question does have subject matter jurisdiction to adjudicate the merits of the patent infringement claim. Yet FDA still refuses to recognize the dismissal of such a case on the merits as a court decision trigger. In these circumstances, FDA's ruling puts the operation of the court decision trigger entirely in the hands of the brand company. This, FDA cannot lawfully do. FDA cannot effectively write the court decision trigger out of the statute when the brand company sues the generic applicant and concedes non-infringement in a dismissal with prejudice. *See Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1285 (D.C. Cir. 1983) (rejecting FDA's interpretation of the Freedom of Information Act for rendering superfluous a major aspect of a "companion provision" of the same act); *C.F. Communications Corp. v. FCC*, 128 F.3d 735, 739

(D.C. Cir. 1997) (rejecting FCC's interpretation of its own rule on grounds that it "violates the familiar principle of statutory interpretation which requires construction 'so that no provision is rendered inoperative or superfluous, void or insignificant'" (citation omitted)).

      **E.**      **Collateral Estoppel Does Not Apply Or Otherwise Bar Apotex's Claims.**

FDA and DRL both argue that Apotex somehow is collaterally estopped from pursuing this case based on the denial of a preliminary injunction in the prior pravastatin litigation. (FDA Br. at 18-19; DRL Br. at 13-14.) Both are wrong.

As an initial matter, "issues litigated in a preliminary injunction action are not *res judicata* and do not form the basis for collateral estoppel." *Community Nutrition Inst. v. Block*, 749 F.2d 50, 56 (D.C. Cir. 1984) (holding that a finding that food was mislabeled at preliminary injunction stage not entitled to collateral estoppel or *res judicata* effect) (quoting *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1350-51 (9th Cir. 1982)). In fact, both the Supreme Court and courts in this Circuit have made clear that the grant or denial of a preliminary injunction does not even constitute law of the case, much less preclude further litigation. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Berrigan v. Sigler*, 499 F.2d 514, 518 (D.C. Cir. 1974); *see also Pharm. Research And Mfrs. of Am. v. Thompson*, 259 F. Supp. 2d 39, 60-61 (D.D.C. 2003) (Bates, J.) (holding that, despite the "admittedly conclusive tone of the [state appellate] court's opinion" denying injunctive relief, it would not have *res judicata* effect). Thus, not surprisingly, neither FDA nor DRL cite a single case from this Circuit applying collateral estoppel based on the denial of a preliminary injunction.

But even if the denial of a preliminary injunction could give rise to issue estoppel for issues actually litigated and decided in the prior action, it would not apply here. "For issue preclusion to apply, the same issue now raised must have been contested by the parties and submitted for judicial determination in the prior case, the issue must have been 'actually and

necessarily determined,' and preclusion must not 'work a basic unfairness' to the party that would be bound by resolution of the issue in the prior case." *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1252, 1303 (D.C. Cir. 2004) (citation omitted).  None of these elements is even remotely satisfied here, most notably because none of the issues under review in this case were, or could have been, litigated in the prior action.

In this case, Apotex challenges FDA's November 3, 2006 letter ruling regarding Apotex's ondansetron ANDA in which the Agency refuses to recognize the *GSK* Order as a court decision trigger.  The relevant issues are, among other things:

- whether the *GSK* Order is a triggering court decision under the statute and FDA's holding-on-the-merits interpretation;

- whether FDA has engaged in disparate treatment by treating the *GSK* Order differently from the substantively indistinguishable *Granutec* order;

- whether, under the controlling statutory language, the same decision that terminates the 30-month stay is sufficient to trigger exclusivity and, if so, whether the *GSK* Order must be treated as a court decision trigger because, as FDA concedes, it is a court decision that the patent is invalid or not infringed sufficient to terminate the 30-month stay; and

- whether FDA's November 3, 2006 letter ruling with regard to ondansetron leads to absurd results and effectively eliminates the court decision trigger.

None of these issues were, and indeed could not have been, litigated in the prior action regarding pravastatin, which involved a whole host of different issues and the propriety of a different administrative decision on a different drug.  Indeed, the November 3, 2006 letter ruling did not even exist, and no court had ever considered the effect of the *GSK* Order.  Preclusion of issues, such as these, not actually litigated would "work a basic unfairness" to say the least.

Notably, FDA and DRL do not seriously argue otherwise, and in fact never specify exactly what issues actually were litigated in the pravastatin litigation that are identical to the issues under consideration here.  Rather, they vaguely describe this case as involving a

challenge to FDA's interpretation of the court decision trigger provision. But framing the issue that broadly would preclude Apotex from ever challenging any administrative decision involving the court decision trigger again, no matter what the drug product and what the circumstances. This, of course, is not the law. Collateral estoppel is not that broad. It applies only to the *identical* issue actually litigated in the prior action. FDA and DRL cannot identify even a single issue here that was actually and necessarily litigated before. In fact, they actually fault Apotex for not raising certain issues before, such as the 30-month stay issue, thus effectively conceding that collateral estoppel does not apply.

## II.     The Harm To Apotex Is Substantial And Irreparable.

No one disputes that Apotex stands to suffer substantial economic harm exceeding $11.7 million in lost sales, or that such losses would be unrecoverable. Instead, FDA and DRL pick at the edges of such harm, suggesting that such losses alone are not irreparable. (*See* FDA Br. at 30-32; DRL Br. at 30-31.) But Apotex never said they were, but rather relies on a host of intangible and unquantifiable harms. Both FDA and DRL focus solely on the monetary harm that Apotex would suffer, ignoring the substantial intangible harm that Apotex would suffer if DRL is awarded an unwarranted 180-day head start. Such harm includes the loss of critical access to major customers and the opportunity for long-term contracts, which, in turn, will adversely affect Apotex's sales opportunities across all of its product lines. (Tsien Decl. Ex. D, McIntire Decl. ¶¶ 4-5, 22-24.) While FDA merely calls such harm "speculative" and DRL characterizes it as "usual and common," neither proffers any evidence to rebut the fact that Apotex will suffer greatly from the inability to compete in the ondansetron market. Together, these tangible and intangible harms more than suffice to establish the irreparable nature of the injuries that Apotex would suffer absent the requested injunction. *See Teva Pharms. USA v.*

*FDA*, 182 F.3d 1003, 1011 n.8 (D.C. Cir. 1999); *see also Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 n.6 (D.C. Cir. 1998).[5]

## III.    The Balance Of Harms Tips Decidedly In Favor Of Granting Immediate Injunctive Relief.

FDA concedes that it has no commercial stake in the outcome of this dispute and therefore can suffer no harm, much less irreparable harm.  (*See* FDA Br. at 35.)  Yet, absent injunctive relief, Apotex stands to lose millions of dollars, goodwill with its customers, and other significant tangible and intangible benefits.

Moreover, DRL cannot claim harm based on the loss of a 180-day head start that it was never entitled to in the first place because it was triggered and expired long ago.  Thus, DRL will not be harmed in the least since presumably it would still be eligible to launch its generic product with the other applicants.  But even if that were not the case, DRL cites the very same type of harm (*e.g.*, loss of investments, sales opportunities and long-term benefits) that it argues would not be irreparable if suffered by Apotex, though without providing any evidentiary support for its assertions.  (DRL Br. at 33-34.)  Accordingly, the balance of harms tips decidedly in favor of granting Apotex's request for a preliminary injunction.  *See Mova*, 140 F.3d at 1066.

## IV.    An Injunction Would Further The Public Interest.

Finally, the public will only benefit from entry of injunctive relief here.  FDA and DRL both ignore an essential element in the balancing process here—the public's interest in the "faithful application of laws."  *Mova*, 140 F.3d at 1066.  That interest would be best served by requiring FDA to apply the governing statute in a manner that is consistent with FDA's prior rulings and the controlling statutory language.  FDA also agrees that the public benefits from the

---

[5]  Both FDA and DRL cite liberally from Judge Bates' prior decision involving pravastatin, though neglect to mention that the D.C. Circuit ultimately upheld denial of the preliminary injunction solely based on the likelihood of success prong, without ever reaching the other factors.  *Apotex*, 449 F.3d 1253-54.

entry of lower cost drugs into the marketplace.  (FDA Br. at 35.)  Absent injunctive relief, FDA's letter ruling admittedly will delay and deprive the consuming public of full generic competition for ondansetron tablets at the earliest possible date.

## **CONCLUSION**

The Court should enter an order requiring FDA to:  (a) set aside its November 3, 2006 administrative decision as arbitrary, capricious, and contrary to law; (b) refrain from awarding any 180-day exclusivity for ondansetron tablet ANDAs; (c) approve Apotex's ondansetron tablet ANDA on December 24, 2006 without delay due to any generic exclusivity awarded pursuant to 21 U.S.C. § 355(j)(5)(B)(iv); and (d) refrain from approving any other ondansetron tablet ANDA until this determination is made and final approval is granted to Apotex.  In the event the Court denies such relief, Apotex moves for an injunction preserving the *status quo* and staying all ondansetron tablet ANDA approvals pending an appeal of this matter to the D.C. Circuit, in order to prevent devastating and irreparable harm to Apotex.[6]

---

[6] Both the D.C. Circuit and this Court have granted such temporary stays in order to preserve the *status quo* and prevent irreparable harm.  *See Apotex Inc. v. FDA*, No. 04-5211 (D.C. Cir.) (granting, by order dated July 26, 2004, stay of ANDA approvals pending resolution of the appeal involving the question of whether a competing ANDA-filer's 180-day exclusivity was triggered); *Apotex Inc. v. FDA*, No. 06-5105 (D.C. Cir.) (staying, by order dated April 20, 2006, ANDA approvals pending resolution of emergency stay motion involving the question of whether a competing ANDA-filer's 180-day exclusivity was triggered).

Dated:  November 27, 2006.           Respectfully submitted,

                                   APOTEX INC.

                           By:           /s/

                                Arthur Y. Tsien, D.C. Bar No. 411579
                                OLSSON, FRANK AND WEEDA, P.C.
                                1400 16th Street, N.W., Suite 400
                                Washington, D.C. 20036-2220
                                (202) 789-1212
                                (202) 234-3550 (facsimile)

Of Counsel:
William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik
Alice L. Riechers
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Apotex Inc.*

## CERTIFICATE OF SERVICE

I, Arthur Y. Tsien, HEREBY CERTIFY that on this 27th day of November, 2006, a true and correct copy of the foregoing REPLY MEMORANDUM IN SUPPORT OF APOTEX INC.'S MOTION FOR PRELIMINARY INJUNCTION was served via ECF filing and electronic mail upon the following counsel:

Andrew E. Clark
U.S. Department of Justice,
Office of Consumer Litigation
Room 950 North
1331 Pennsylvania Ave., NW
Washington, D.C. 20004

*Counsel for the Federal Defendants*

John Longstreth
Brian K. McCalmon
PRESTON GATES ELLIS & ROUVELAS
  MEEDS LLP
1735 New York Avenue, N.W., Suite 500
Washington, DC 20006-5209

Andrew J. Miller
Stuart Sender
Bruce D. Radin
BUDD LARNER P.C.
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078-2703

*Counsel for Intervenor-Defendants Dr.
Reddy's Laboratories, Ltd. and Dr. Reddy's
Laboratories, Inc.*

Andrew M. Berdon
QUINN EMANUEL URQUHART OLIVER
  & HEDGES, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010

D. Christopher Ohly
Jeffrey s. Jacobovitz
SCHIFF HARDIN, LLP
1101 Connecticut Ave., N.W., Suite 600
Washington, D.C. 20036

*Counsel for Intervenor-Plaintiff Mutual
Pharmaceutical Co., Inc.*

_____
                /s/
            Arthur Y. Tsien
            *Counsel for Apotex Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| APOTEX INC. | ) |
| | ) |
| Plaintiff, and | ) |
| | ) |
| MUTUAL PHARMACEUTICAL CO., INC., | ) Case No. 06-1890 (RMC) |
| | ) |
| Intervenor-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FOOD AND DRUG ADMINISTRATION, *et al.* | ) |
| | ) |
| Defendants, and | ) |
| | ) |
| DR. REDDY'S LABORATORIES, LTD., *et al.* | ) |
| | ) |
| Intervenor-Defendants. | ) |
| | ) |

## DECLARATION OF WILLIAM A. RAKOCZY

I, WILLIAM A. RAKOCZY, declare as follows:

1.    I am a partner in the law firm of RAKOCZY MOLINO MAZZOCHI SIWIK LLP, counsel for Apotex Inc. ("Apotex").

2.    I am a practicing attorney and member in good standing of the Bar of the District of Columbia, and am admitted to practice before the United States District Court for the District of Columbia and before the United States Court of Appeals for the District of Columbia Circuit.

3.    I submit this Declaration in support of Apotex's Motion for a Preliminary Injunction.

4.    I have personal knowledge of the facts stated in this Declaration and am competent to testify to the same.

5.    Attached hereto at Exhibit A is a true and accurate copy of the October 11, 2005 Federal Defendants' Memorandum In Response To Plaintiff's Supplemental Brief in *Teva Pharmaceuticals USA, Inc. v. FDA*, Civ. A. No. 05-1469 (JDB).

6.    Attached hereto at Exhibit B is a true and accurate copy of an e-mail, dated October 2, 2006, together with the original attachment referenced therein, from counsel for Apotex, Christine J. Siwik, to counsel for FDA, John Weiner.

7.    During at least three separate telephone conferences with counsel for FDA (John Weiner) in October 2006, and in direct response to FDA's inquiries, counsel for Apotex (William A. Rakoczy and/or Christine J. Siwik) conveyed Apotex's argument and position that the May 2005 *GSK* Order is as much a holding-on-the-merits as the *Granutec* order.

8.    The foregoing facts are true and correct as I verify and believe.

Dated:  November 27, 2006

I, WILLIAM A. RAKOCZY, hereby declare, under penalty of perjury under 28 U.S.C. § 1746 and the laws of the United States of America, that the foregoing Declaration is true and correct.

WILLIAM A. RAKOCZY

# EXHIBIT A

## Declaration of William A. Rakoczy

*In support of Reply Memorandum in Support of Apotex Inc. 's*
*Motion For Preliminary Injunction*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TEVA PHARMACEUTICALS USA, INC., )
                                   )
           Plaintiff,            )
                                   )
     v.                       )       Civil Action No. 05-1469 (JDB)
                                   )
FOOD AND DRUG ADMINISTRATION, )
et al.,                           )
                                   )
           Defendants.      )
                                 )

## FEDERAL DEFENDANTS' MEMORANDUM IN
## RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF

The D.C. Circuit held that the dismissal of a declaratory judgment action for lack of jurisdiction triggers exclusivity if the patentee is estopped from enforcing its patent against the declaratory plaintiff. *See Teva Pharms. USA, Inc. v. FDA*, 182 F.3d 1003, 1009 (D.C. Cir. 1999) ("*Teva I*"); *see also Teva Pharm., USA, Inc. v. FDA*, No. 99-5287, 2000 U.S. App. LEXIS 38,667 at 6 (D.C. Cir. Nov. 15, 2000) ("*Teva II*"). In both the Teva-Syntex suit at issue in *Teva I* and *II* and the Apotex-Bristol suit at issue here, the court entered an order dismissing for lack of jurisdiction, and in both cases the patentee was estopped from enforcing its patent against the plaintiff. Teva seizes upon the happenstance that the Teva-Syntex dismissal resulted from a motion to dismiss on the uncontested ground that Syntex would not sue Teva, while the Apotex-Bristol dismissal resulted from a stipulation by the parties informing the court that Bristol would not sue Apotex. Far from suggesting that the form of the dismissal is dispositive, however, the *Teva I* court took pains to elevate substance over form, admonishing that the significance of a decision or a holding often lies in its preclusive effect. *See Teva I*, 182 F.3d at 1008.

There is no meaningful distinction between the preclusive dismissals at issue in *Teva* and the present

case for purposes of the court-decision trigger.

The premise of Teva's argument that the Apotex-Bristol dismissal should be viewed as

something less than a "decision of a court," 21 U.S.C. § 355(j)(5)(B)(iv)(II) (2003), is that it was

accomplished pursuant to Fed. R. Civ. P. 41(a)(1)(ii) and, as such, took effect without any need for

action by the court. That premise is wrong for three reasons. First, the "Stipulation and Order"

submitted to Judge Pauley did not purport to be a dismissal pursuant to Rule 41(a)(1)(ii) or even

mention that Rule. *See* Ex. A to Teva Suppl. Br. Second, the parties sought (and received) action from

Judge Pauley on the Stipulation and Order, not only by calling it a Stipulation *and Order,* but also by

specifically including a signature line for Judge Pauley to note his endorsement. *See id.* at 4. Whether

or not the dismissal *could* have been effected without any action by the court, the simple fact is that it

was not. Third, and in any event, given the expressly jurisdictional terms of the Stipulation and Order,

it could not have been a mere voluntary dismissal. Apotex and Bristol did not merely seek to dismiss

the action because they had agreed it should not be pursued; rather, they sought to dismiss it "for lack

of subject matter jurisdiction." *Id.* Whether jurisdiction is present or absent is for the court to decide,

not for the parties to stipulate. Accordingly, rather than being superfluous or null-and-void act as Teva

suggests, Judge Pauley's approval of the Stipulation and Order was a "decision of a court" "holding"

that jurisdiction was lacking because of Bristol's representations. Under *Teva,* nothing more was

required to trigger exclusivity for pravastatin.

## I.   Second Circuit Case Law Does Not Control the Question of What Constitutes a "Decision of a Court" or a "Holding" under 21 U.S.C. § 355(j)(5)(B)(iv)(II)

As an initial matter, Teva's suggestion that this Court should apply Second Circuit case law

concerning the meaning and effect of Rule 41(a) dismissals to decide whether the Stipulation and

Order constitutes a "decision of a court" with a "holding" is baseless. The issue before this Court is exclusively the interpretation of the court-decision trigger provision. This case has nothing to do with whether Judge Pauley would retain jurisdiction to enforce the Stipulation and Order or with the significance of the dismissal under Rule 41(a)(1) (assuming, contrary to fact, that the dismissal was effected under Rule 41(a)(1)) or for any other purpose.

Nor is there any basis for Teva's contention that this Court should apply Second Circuit case law on the theory that if the Apotex-Bristol dismissal had been appealed, that appeal would have been to the Federal Circuit, which would have treated the Rule 41(a)(1) issue as a non-patent issue on which regional circuit precedent governed. There is no need or justification for such contortions on the issue before this Court. This case is an Administrative Procedure Act suit by Teva against FDA. This case is not the Apotex-Bristol patent suit and, indeed, is not a patent suit at all.

The only question before the Court here is whether the Apotex-Bristol dismissal – whatever its procedural and substantive impact in the Second Circuit or elsewhere – constitutes a "decision of a court . . . holding the patent which is the subject of the certification to be invalid or not infringed." 21 U.S.C. § 355(j)(5)(B)(iv)(II). The only circuit to have interpreted the court-decision trigger provision is the D.C. Circuit in *Teva I and II. Teva b*inds this Court and FDA alike,[1] and Teva's contention that this Court should apply Second Circuit case law for purposes of the court-decision trigger provision is inconsistent with them. The Teva-Syntex dismissal at issue in *Teva* occurred in the Northern District of California, but the D.C. Circuit did not look to, let alone suggest it was bound to apply, Ninth

---

[1] *Cf. In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175-76 (D.C. Cir. 1987) (Ginsburg, J.) ("[I]t is logically inconsistent to require one judge to apply simultaneously different and conflicting interpretations of what is supposed to be a unitary federal law. . . . Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit.").

Circuit case law to determine whether Judge Legge's dismissal constituted a "decision of a court" with a "holding" that satisfied the court-decision trigger provision.

Moreover, the D.C. Circuit made clear that the court-decision trigger provision should be interpreted functionally in light of the purposes of Hatch-Waxman. *See Teva I*, 182 F.3d at 1008-10. It would fly in the face of that principle for the triggering determination to turn on subtle and technical differences between regional circuits' case law or practice concerning stipulated or so-ordered dismissals. Congress could not have intended that the triggering of nationwide exclusivity vary depending on the location of the court issuing the assertedly triggering decision. Nor could Congress have intended that FDA be required to apply differing versions of the court-decision trigger to decisions issued in different jurisdictions, especially since FDA cannot know at the time it makes its administrative determination whether it will be sued in the court that issued the underlying decision, in this Court, in another court, or in multiple courts.

## II.   The Stipulation and Order Entered by Judge Pauley Is a "Decision of a Court"

Teva argues that there was no "decision" by the Apotex-Bristol court because a Rule 41(a)(1)(ii) dismissal is automatically executed, without any involvement of the court, regardless of whether (as here) the court signed the order. Teva Suppl. Br. at 4-6. Teva's argument is wrong even on its own terms, because there is no indication in the Stipulation and Order (or in the Apotex-Bristol court docket) that the dismissal was pursuant to Rule 41(a)(1)(ii). The Stipulation and Order does not mention Rule 41(a)(1)(ii) or suggest in any way that that rule provided the procedural avenue for the dismissal. In fact, the Stipulation and Order demonstrates that the parties believed that the dismissal was not being effected under Rule 41(a)(1)(ii). As Teva observes, a dismissal under Rule 41(a)(1)(ii) does not require approval of the court. Yet Apotex and Bristol expressly sought Judge Pauley's

4

approval by including a signature line for him to endorse the Stipulation and Order. Likewise, Rule

41(a)(1)(ii) permits the parties to stipulate to a dismissal, but it does not permit the parties to *order* a

dismissal without court action. Yet Apotex and Bristol submitted not a stipulation as contemplated by

Rule 41(a)(1)(ii), but a Stipulation and Order that, as such, sought and required the court's approval.

And finally, Judge Pauley did sign the Stipulation and Order, transforming it from a stipulation or a

proposed order into an actual order of the court.

Teva's argument that the Apotex-Bristol dismissal nonetheless did not constitute a "decision of

a court" contradicts reality and ignores the special nature of a determination concerning subject-matter

jurisdiction. Arguing that Apotex and Bristol (or Apotex alone, *see* Teva Suppl. Br. 5 n.3) *could* have

dismissed the suit without any action by the court cannot obscure the fact that Apotex and Bristol did

not do so. Judge Pauley signed and endorsed the Stipulation and Order, and that historical fact cannot

be erased.[2]

Nor can Teva rewrite history by treating Judge Pauley's decision as a nullity. According to

Teva, once the stipulation was filed, the court automatically was divested of jurisdiction and the court's

subsequent attempt to take action on the stipulation to decide for itself that it lacked jurisdiction was

null and void. First, again, what Teva refers to as the "stipulation" was not merely a stipulation, but

rather a Stipulation and Order. Teva's argument amounts to saying that the parties could issue an order

---

[2] Because the parties sought and received the court's imprimatur on their agreement, the Stipulation and Order would constitute a "decision of a court" even if the dismissal had been pursuant to Rule 41(a)(1)(ii). *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381-82 (1994) ("Even when, as occurred here, the dismissal is pursuant to Rule 41(a)(1)(ii) (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order . . . if the parties agree.").

without the court's participation and that the instant the parties filed their "order," the court lost all authority to take any action.

Second, and in any event, "it is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (citing *United States v. Mine Workers*, 330 U.S. 258, 291 (1947)). A court's determination that it lacks jurisdiction is not null and void because it occurs after the parties have agreed between themselves that the court lacks jurisdiction or after the parties have attempted to divest the court of jurisdiction. *Cf. Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1055 (D.C. Cir. 1988) ("a court is responsible to determine its own jurisdiction regardless of the parties' views"). In short, Apotex and Bristol no more could stipulate that the court lacked jurisdiction or deprive the court of the authority to make that determination for itself than they could stipulate that the court had jurisdiction, and Judge Pauley's decision that jurisdiction was absent was not somehow itself void for lack of jurisdiction.

In these circumstances, it was logical and appropriate for the parties to submit their stipulation and proposed order to the court for approval. And it was equally appropriate for the court to decide to sign off on the proposed order. To be sure, Apotex could have dismissed its action without a stipulation or order of any kind under Rule 41(a)(1)(i). But the Stipulation and Order that Apotex and Bristol in fact filed was not simply a notice dismissing the case because Apotex no longer wished to pursue it or a stipulation dismissing it because the parties had resolved their differences. Rather, it was a Stipulation and Order that based the dismissal of the case upon an express finding of lack of subject-matter jurisdiction – a finding that, by its nature, could only be made by the court. *Cf. Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 737 (2d Cir. 2002) ("In many cases, a stipulated settlement will contemplate actions that are not within the power of the litigants to perform, but rather lie within the

6

power of the district court ordering the settlement."). It is telling, but not surprising given the special

nature of a determination as to jurisdiction, that none of the cases that Teva cites involved a stipulated

dismissal that purported to be based upon a finding that jurisdiction was lacking. Even if Teva were

correct that the filing of a stipulated dismissal under Rule 41(a)(1)(ii) normally divests a court of

jurisdiction, the Apotex-Bristol court necessarily retained jurisdiction to determine whether it lacked

jurisdiction as the Stipulation and Order stated, and the court decided that jurisdictional question when

it approved and entered the Stipulation and Order.

Because none of Teva's cited cases involved a dismissal for lack of jurisdiction (or in any way

related to the court-decision trigger provision or Hatch-Waxman), those cases provide no support for

Teva's position here. Indeed, some of them undermine Teva's contention that the court's involvement

automatically ceases when a Rule 41(a)(1)(ii) stipulated dismissal is filed.[3] The issue in other cases

was whether the parties had intended that the court retain jurisdiction following a stipulated dismissal

by incorporating the terms of the settlement into the dismissal order.[4] Here, the Stipulation and Order

stated the terms of the parties' agreement – that there was no jurisdiction because Bristol had no

---

[3] *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 139-40 (2d Cir. 2004) (holding that district court retained its supervisory power over its own records and files, even though dismissal was pursuant to Rule 41(a)(1)(ii)); *Randall v. Merrill Lynch*, 820 F.2d 1317 (D.C. Cir. 1987) (affirming exercise of jurisdiction under Rule 60(b) to vacate a voluntary dismissal).

[4] *Compare Roberson v. Giuliani*, 346 F.3d 75, 82-83 & n.9 (2d Cir. 2003) (yes), *with Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 916-17 & n.2 (2d Cir. 1998) (no). *See also Gambale*, 377 F.3d at 142 n.6 ("We note as a preliminary matter that the district court was not asked to, and did not, 'approve' or otherwise act with respect to the Settlement Agreement.").

intention to sue Apotex – on its face, and the parties sought and obtained the court's approval of that finding. Other cases cited by Teva are even farther afield.[5]

In short, Teva has marshaled no support for its belated attempt to distinguish *Teva* based on the technical form of the dismissal at issue here. The D.C. Circuit spoke clearly in *Teva* on the question before this Court: whether a dismissal of a declaratory-judgment action constitutes a triggering court decision when the patentee is estopped from enforcing its patent against the declaratory plaintiff. Particularly given the clear teaching of *Teva* that the statutory purposes require a functional interpretation of section 355(j)(5)(B)(iv)(II), it would senselessly exalt form over substance to hold that the Apotex-Bristol dismissal was not a "decision of a court" because the court endorsed a Stipulation and Order finding that jurisdiction was lacking rather than, as in the Syntex-Teva suit, granted a motion to dismiss arguing that jurisdiction was lacking.

## III.   The Stipulation and Order Contains a "Holding" that Satisfies *Teva I* and *II*

Teva's argument that there was no "holding" because Judge Pauley's "endorsement of the stipulation did not constitute an adoption of its contents," Teva Suppl. Br. 7, should be rejected for the same reasons as Teva's "decision of a court" argument. First, this argument is contrary to the facts. The parties presented Judge Pauley with a document that stated that jurisdiction was lacking and asked him to endorse it, and he signed it under a "so ordered" directive. To say that the court's endorsement did not constitute an adoption of the contents is to say either that Judge Pauley so-ordered the Stipulation and Order without reading it or that he so-ordered it despite disagreeing with its contents.

---

[5] *See Torres v. Walker*, 356 F.3d 238, 243-44 (2d Cir. 2004) (holding that a "so-ordered" stipulation of dismissal did not qualify as a "monetary judgment" for purposes of Prison Litigation Reform Act attorney's fees cap); *Oil, Chem. and Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452, 458-59 (D.C. Cir. 2002) (denying attorney's fees because dismissal order did not constitute a decision on the merits).

It is far more plausible, as well as respectful, to take the court's endorsement at face value as reflecting the court's approval of what it was endorsing.

Second, Teva's hypertechnical arguments about what constitutes a "holding" are contrary to *Teva I*, which made clear that the term "holding," no less than the term "decision," is "susceptible to interpretation" and that a "holding" need not adhere to any particular form. 182 F.3d at 1007-08. Far from matters of form being the key to a "holding," the D.C. Circuit explained that "the significance" of a holding "often lies in its preclusive effect," *id*. at 1008, so that what matters for purposes of the court-decision trigger is not what form the "decision" or "holding" takes, but whether the patentee is estopped from enforcing its patent. If the dismissal has such preclusive effect, as the dismissal of Apotex's action in this case does, no more is required. Indeed, the Teva-Syntex dismissal order at issue in *Teva I* was no different in substance from the Stipulation and Order here. In both cases, the court accepted the uncontested fact that the plaintiff then lacked a reasonable apprehension of suit and dismissed for lack of jurisdiction on that basis.[6] There is no legally significant difference under *Teva* between Judge Legge's dismissal for lack of jurisdiction based on an uncontested fact and the Stipulation and Order here in which Judge Pauley ordered that the case be "dismissed, for lack of subject matter jurisdiction" based upon Bristol's representations.

Teva would have the triggering of exclusivity turn on such factors as whether a case is dismissed by stipulation or adjudication, whether the court or the parties drafted the language of the dismissal order, whether the court needed to sign the order, and under which sub-part of Rule 41 the

---

[6] Contrary to Teva's contention, the Teva-Syntex court expressly declined to make a determination about the contested issue of whether Teva ever had had a reasonable apprehension of suit and limited its analysis to the undisputed conclusion that Teva at that time had no such apprehension. *See Teva Pharm. USA, Inc. v. Syntex (USA) Inc.*, No. 98-02314, at 23-24 (dismissal order Aug. 14, 1998) (attached as Ex. A to Fed. Def. Mem. Opp. PI).

dismissal could have been effected.  Not only are such technical distinctions meaningless under *Teva*,

but requiring FDA to draw such distinctions would exacerbate its already-burdensome task of

determining when a dismissal triggers exclusivity under *Teva*'s estoppel-focused rule.  It is enough that

*Teva* requires the agency to look behind and ascertain the basis for the dismissal order to determine

whether the patentee is estopped.  The agency should not be required also to parse civil procedure

doctrine in order to determine whether what appears on its face to be a court decision holding that

jurisdiction is lacking because of representations by the patentee meets the additional technical criteria

that Teva would have the Court impose.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction should be denied.

Of Counsel:                                    Respectfully submitted,

PAULA M. STANNARD                              PETER D. KEISLER
Acting General Counsel                         Assistant Attorney General

SHELDON T. BRADSHAW                            JEFFREY S. BUCHOLTZ
Chief Counsel                                  Deputy Assistant Attorney General
Food and Drug Division
                                               EUGENE M. THIROLF
ERIC M. BLUMBERG                               Director
Deputy Chief Counsel, Litigation              Office of Consumer Litigation

WENDY S. VICENTE                               _____/s/_____
Associate Chief Counsel                        ANDREW E. CLARK
U.S. Dept. of Health & Human Services          DRAKE CUTINI
Office of the General Counsel                  Attorney
5600 Fishers Lane                              Office of Consumer Litigation
Rockville, MD 20857                            U.S. Department of Justice
(301) 827-7138                                 P.O. Box 386
                                               Washington, D.C.  20044
                                               Tel:  (202) 307-0067
October 11, 2005                               Fax:  (202) 514-8742

# EXHIBIT B

# Declaration of William A. Rakoczy

*In support of Reply Memorandum in Support of Apotex Inc.'s Motion For Preliminary Injunction*

**From:** Christine Siwik

**Sent:** Monday, October 02, 2006 2:46 PM

**To:** Bar Weiner (john.weiner@fda.hhs.gov)

**Cc:** William A. Rakoczy

**Subject:** Apotex - Ondansetron

**Attachments:** 10-7-96 Decision by Judge Goettel for Partial Summary Judgment - Glaxo v. Boehringer.pdf

Dear Bar:

Following up on our call from earlier today, attached please find the memorandum decision in the Glaxo v. Boehringer litigation.

Warmest regards,
Christine

Christine J. Siwik
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard St., Suite 500
Chicago, IL 60610
Direct Phone: (312) 222-6304
Direct Fax: (312) 222-6324

The contents of this message, including any attachment(s), are subject to, among others, the attorney-client and work product privileges. If this message has been received in error, please destroy. Your receipt of this message is not intended to waive any applicable privilege. This message should not be forwarded without permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------X

GLAXO, INC., GLAXO GROUP LIMITED,        :
and ALLEN AND HANBURYS LIMITED,
                                         :
          Plaintiffs
                                         :
          -against-                            No. 3: 95-CV-01342(GLG)
                                         :
BOEHRINGER INGELHEIM CORPORATION,              Memorandum Decision
and BOEHRINGER INGELHEIM                  :
CHEMICALS, INC.,
                                         :
          Defendants.
                                         :
------------------------------------------X

        Defendants have moved for partial summary judgment (doc. #

135) as to Plaintiffs' claim that Defendants' ranitidine

hydrochloride product infringes Plaintiffs' patents nos. 4,521,431

(the '431 patent) and 4,672,133 (the '133 patent). Based on

Plaintiffs' express concession that Defendants' product does not

infringe these patents, Defendants' Motion for Partial Summary

Judgment on this claim is GRANTED.


                        SO ORDERED.


Dated:    October 7  , 1996.
          Bridgeport, Connecticut.



                              _____
                              GERARD L. GOETTEL
                              U.S.D.J.